YETTA NALABOFF, as Administratrix, etc., of AARON NALABOFF, Deceased, Appellant, *v.* STANLEY-MARK-STRAND CORP. and Others, Respondents.

First Department, March 13, 1942.

*Joseph Schottland* of counsel [*Gerald J. Laurence*, attorney], for the appellant.

*Walter G. Evans* of counsel [*Alexander Orr, Jr.*, with him on the brief; *James H. Brassel*, attorney], for the respondents Stanley-Mark-Strand Corp. and Warner Bros. Circuit Management Corp.

*John G. Reilly* of counsel [*Thomas A. Clarke* with him on the brief; *Van Orman & Guilfoil*, attorneys], for the respondent G. A. Zimmerman Corp.

CALLAHAN, J.   Plaintiff's intestate met his death as the result of an accident which occurred on March 14, 1940, in the basement of the Strand Theatre, located at Forty-seventh street and Broadway, New York city.

The defendant Stanley-Mark-Strand Corp. was the lessee of the theatre, and the defendant Warner Bros. Circuit Management Corp. was the managing agent for the lessee. The lessee entered into a contract with G. A. Zimmerman Corp. (hereinafter referred to as Zimmerman), by the terms of which the contractor agreed to provide all materials and perform all work in the installation of an air conditioning system in the theatre. Part of the work which Zimmerman was required to perform was to dismantle and remove a battery of radiators which were located in the basement of the theatre. These radiators were part of the old heating system of the theatre. They rested one upon the other in tiers.

On March 12, 1940, Zimmerman entered into a subcontract with the Wallabout Scrap Iron & Metal Company, Inc. (hereinafter called Wallabout) for the dismantling and removal of the radiators referred to above. This subcontract was in writing and provided as follows:

" Accepting your estimate of March 11, 1940 you will remove the cast iron heating sections as shown your representative. You will dismantle and remove with your labor the heating sections and misc. piping in connection with the same. This work to be done when the theatre is closed and is done for the salvage value of the materials. You will remove all materials, rubbish, etc.

" We will arrange to blank off and disconnect all live lines. * * *."

Plaintiff's intestate, Aaron Nalaboff, was vice-president of Wallabout, and as its agent was to perform the actual work of dismantling the radiators, with the assistance of certain helpers.

On March twelfth, pursuant to an arrangement with Zimmerman's president, Aaron Nalaboff, accompanied by one David Nalaboff, visited the theatre to inspect and prepare for the work. Zimmerman had told Aaron Nalaboff that he could go to the theatre and meet Mr. Tobin, who was Zimmerman's representative on the job, and Tobin would show him the work to be performed. Pursuant to this arrangement, the two Nalaboffs met Tobin, who accompanied them to the basement to examine the prospective work. Zimmerman testified that Tobin was in charge of the job in Zimmerman's absence.

David Nalaboff testified that on this visit the radiators were inspected with the aid of a flashlight, the basement being dark. He attempted to relate a conversation with Tobin with respect to the furnishing of illumination of the basement, and relating to an understanding that no supports or braces would be removed from the radiators themselves, and that Zimmerman was merely to blank off live steam connections. This testimony was excluded

by the trial court on the ground that it would modify the written contract.

The written contract was silent as to who was to furnish light and as to the details as to disconnection of radiators, except that it contained the provision that the general contractor was to blank off and disconnect live lines.

It appears that at the time of the inspection of March twelfth the separate radiators making up the battery were held together with braces and stays. Apparently a proximate cause of the accident was the removal of these braces and stays, for the evidence discloses that in the early morning of March fourteenth, when plaintiff's intestate was about to commence the performance of the work of dismantling, one of the upper radiators fell when he merely placed his hand upon it. As the radiator was falling plaintiff's intestate attempted to avoid being struck by it, but tripped over some pipe which was strewn upon the floor, and the radiator landed on his back, inflicting injuries from which he subsequently died.

The evidence discloses that the room was poorly lighted, and that the floor of the basement was littered with pipes and debris which apparently had been left there by Zimmerman's workmen.

We think that the evidence adduced, construed most favorably in favor of the plaintiff, was sufficient to establish *prima facie* evidence of defendant Zimmerman's negligence. In any event, testimony of an arrangement to permit the radiators to remain fastened together until dismantling work began, and breach of that arrangement without warning Wallabout thereof, would have established such negligence.

The parol evidence rule would not seem to be applicable for two reasons: (1) The action was not one between the parties to the contract, or those claiming under them; and (2) if we assume that there was privity between the decedent and Zimmerman, the contract was silent as to who was to furnish illumination and as to the manner of the performance of the work with respect to removal of braces and stays. Such braces and stays were not a part of the live lines which, as the writing provided, were to be blanked off and disconnected by Zimmerman.

Under the circumstances it was error to dismiss the complaint against Zimmerman.

There is no proof, however, that either the lessee or its managing agent had anything to do with supervision of the work, or that they knew of the subcontract between Zimmerman and Wallabout. The work let was not inherently dangerous, and Zimmerman's failure to warn was casual conduct in the performance of the work of an independent contractor.

The evidence tendered with relation to the conversations between Tobin and Nalaboff was not offered against the lessee or its managing agent. Under the circumstances the complaint was properly dismissed as to the lessee and its agent. But the issue as to Zimmerman's negligence should have been submitted to the jury.

The judgment should be reversed as to the defendant G. A. Zimmerman Corp., with costs, and a new trial ordered as to said defendant, the action severed, and the judgment affirmed as to the other defendants, with costs.

MARTIN, P. J., GLENNON, DORE and COHN, JJ., concur.

Judgment unanimously reversed as to the defendant G. A. Zimmerman Corp., with costs to the appellant, and a new trial ordered as to said defendant, the action severed, and the judgment as to the other defendants, Stanley-Mark-Strand Corp. and Warner Bros. Circuit Management Corp., affirmed, with costs to said defendants.